**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Giorgio PIAGET, Defendant–Appellant.**

No. 90–8008

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 4, 1990.

---

PER CURIAM:

I.

Defendant-appellant Giorgio Piaget appeals from his jury conviction of possessing 3,4 methylenedioxymethamphetamine ("MDMA" or "ecstasy") with intent to distribute. 21 U.S.C. § 841(a)(1). Piaget appeals on the following grounds: the trial court erred in overruling his motion to suppress evidence; MDMA was not a properly scheduled controlled substance; the attorney general lacked discretion to schedule MDMA as a controlled substance; the attorney general improperly scheduled MDMA; and the district court erred in overruling Piaget's motion for severance. We reject each of these claims, and affirm Piaget's conviction.

Department of Public Safety (DPS) officer Jones conducted surveillance on Sammy Earl Stewart, who had a history of drug convictions. On December 7, 1988, Jones followed Stewart to his house, watched him go inside and return with a gray canvas bag which he placed in his pick up truck. Jones followed Stewart to a nearby supermarket where Stewart met Piaget and handed him the gray bag. Jones then followed Piaget and contacted other DPS officers to stop Piaget and search the trunk of his car, where they found the gray bag filled with MDMA. Piaget was then arrested, tried and convicted together with Stewart.

II.

A.

Piaget's first argument on appeal is that the district court erred in overruling his motion to suppress evidence. Piaget argues that the evidence should have been suppressed because the officers did not have probable cause to arrest him.

Our standard of review for a motion to suppress based on live testimony at a suppression hearing is to accept the trial court's factual findings unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Muniz–Melchor*, 894 F.2d 1430, 1433–34 (5th Cir.), *cert. de-*

Edgar A. Mason, Dallas, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Ronald F. Ederer, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before KING, GARWOOD and DUHÉ, Circuit Judges.

*nied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990) (quoting *U.S. v. Maldonado,* 735 F.2d 809, 814 (5th Cir.1984)). Furthermore, we view the evidence in the light most favorable to the prevailing party. *United States v. Reed,* 882 F.2d 147, 149 (5th Cir.1989); *United States v. Lanford,* 838 F.2d 1351 (5th Cir.1988). We will assume, arguendo, that the stop was not a *Terry* stop and thus Jones needed probable cause to stop, and not merely reasonable suspicion. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

A warrantless search of an automobile is permissible where officers have probable cause to believe that the vehicle contains contraband. *U.S. v. Prati,* 861 F.2d 82, 85 (5th Cir.1988). In determining whether an officer has probable cause, we look to the totality of the circumstances. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983).

In the instant case, Piaget met Stewart at a supermarket parking lot. Jones had been investigating Stewart for more than one year for drug offenses. Stewart had three previous arrests for drug possession, and two confidential informants linked him to additional offenses. Furthermore, Jones knew that Stewart was not gainfully employed, but nevertheless lived in a high middle or upper class home and owned a Mercedes Benz automobile.

On the day of the alleged drug transaction, Jones watched Stewart, who appeared paranoid and nervous, put the gray canvas bag into his pick up truck. Jones watched Stewart drive to a supermarket and park next to Piaget's Cadillac. Stewart then handed the canvas bag to Piaget, who put it in his trunk.

Piaget next drove to Dallas, which is where a confidential informant told Jones that Stewart was sending drugs. Jones discovered that Piaget's Cadillac was a rental car—a common mode of transportation for drug dealers. Jones radioed for uniformed officers to stop Piaget.

The stopping and searching of Piaget's car was lawful:

A warrantless search of an automobile stopped by police officers who have prob-

able cause to believe that an automobile contains contraband is permissible under the fourth amendment.

*U.S. v. De Los Santos,* 810 F.2d 1326, 1336–37 (5th Cir.), *cert. denied,* 484 U.S. 978, 108 S.Ct. 490, 98 L.Ed.2d 488 (1987) (quoting *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). *See United States v. Ross,* 456 U.S. 798, 823–24, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982) (police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it may conduct a warrantless search of the automobile as thorough as a magistrate could authorize by warrant). Given Stewart's history of drug dealing and the transfer of the gray bag to Piaget, we therefore agree with the district court that the police had probable cause to stop and search Piaget's car.

The officers had probable cause to search the trunk because Jones watched Piaget put the canvas bag, which he believed contained illegal drugs, into the trunk. Because the officers had probable cause to search for the bag, we need not consider whether Piaget consented to the search. Furthermore, upon opening the trunk and questioning Piaget about the gray bag, Piaget stated that he knew nothing about it. He thus abandoned the bag, leaving the officers to examine its contents. Once a bag has been abandoned, and the abandonment is not a product of improper police conduct, the defendant cannot challenge the subsequent search of the bag. *U.S. v. Gutierrez,* 849 F.2d 940, 943 (5th Cir.1988); *U.S. v. Karman,* 849 F.2d 928, 931 (5th Cir.1988). Thus the officers had probable cause to stop Piaget and to search for the gray bag. They then could open the bag because Piaget abandoned it. And once the officers saw that the bag contained MDMA, they had probable cause to arrest Piaget. Therefore, Piaget's motion to suppress was properly denied.

**B.**

 In his second claim, Piaget argues that 3,4 methylenedioxymethamphetamine

(MDMA) was not properly designated as a controlled substance on December 7, 1988. Piaget filed a motion to dismiss the indictment due to the alleged improper designation of MDMA. After a hearing, the court denied relief because the drug was "permanently scheduled."

According to 21 U.S.C. § 812,

... a drug or other substance may not be placed in any schedule unless the findings required for such schedule are made with respect to such drug or other substance. The findings required for each of the schedules are as follows:

(1) Schedule I

(A) The drug or other substance has a high potential for abuse.

(B) The drug or other substance has no currently accepted medical use in treatment in the United States.

(C) There is a lack of accepted safety for use of the drug or other substance under medical supervision.

In deciding whether a drug is properly scheduled, the standard of review of the Administrator's finding is whether there is "substantial evidence in the Administrator's record to support the Administrator's determination." *Grinspoon v. Drug Enforcement Administration*, 828 F.2d 881, 895 (1st Cir.1987).

Piaget contends that MDMA was not a properly controlled substance at the time of his arrest. The DEA, in a final order, placed MDMA on schedule I of the Controlled Substance Act. As part of the proceedings, the Administrative Law Judge (ALJ) held a hearing to decide whether MDMA had a currently accepted medical use. The ALJ concluded that MDMA did in fact have an accepted medical use and thus placed it in schedule III. 51 Fed.Reg. 36552, 36552–53 (1986). The Administrator then considered the findings of the ALJ and concluded that because the Food and Drug Administration (FDA) did not approve MDMA for interstate marketing, it therefore had no accepted medical use. On this basis, the Administrator determined that MDMA was a schedule I controlled substance. *Id.* at 36553–54.

The Court of Appeals for the First Circuit rejected this argument, stating that the absence of FDA interstate marketing approval was not by itself conclusive of the lack of currently accepted medical use. *Grinspoon v. Drug Enforcement Administration*, 828 F.2d 881 (1st Cir.1987). The *Grinspoon* court vacated and remanded the placing of MDMA in schedule I of the Controlled Substances Act to the Administrator for further proceedings due to his misinterpretation of 21 U.S.C. § 812(b)(1).

The Administrator replaced MDMA on Schedule I without any further hearings. Piaget claims that the Administrator had to conduct further hearings to comply with the *Grinspoon* court's remanding for "further proceedings." *Grinspoon* at 891. We disagree. Due to the completeness of the record below, the Administrator could correctly place MDMA on schedule I by relying on the prior hearing before the ALJ. 53 Fed.Reg. 5156 (1988). We conclude that there is substantial evidence in the Administrator's record to conclude that MDMA had no currently acceptable medical use, and thus properly was placed in Schedule I at the time of Piaget's arrest.

Piaget also claims that the delegation by Congress to the Attorney General of the authority to schedule MDMA was unconstitutional. This court has specifically rejected this argument. *United States v. Gordon*, 580 F.2d 827, 837–41 (5th Cir.), *cert. denied*, 439 U.S. 1051, 99 S.Ct. 731, 58 L.Ed.2d 711 (1978).

Piaget finally claims that *Grinspoon* remands the decision of how to schedule MDMA back to the Attorney General for further hearings. We disagree. The *Grinspoon* court required the Administrator to reconsider his decision, not the Attorney General. *Grinspoon* at 891–92, 898.

### C.

█ Piaget claims that the district court erred in overruling his motion for severance under Fed.R.Crim.P. 8 & 14. Piaget argues that his case was prejudiced because of conflicting evidence and narcotics trafficking evidence presented against Stewart. Our standard of review for a

district court's denial of a motion for severance is to reverse only if the district court abused its discretion. Piaget contends that the conflicting defenses and prejudicial spill over of evidence are sufficient reasons for overruling the district court's denial of severance.

Fed.R.Crim.P. 8(b) states that "two ... defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction...." This court has stated that Fed.R.Crim.P. Rule 8(b) is to be broadly construed in favor of initial joinder. *See United States v. Scott*, 659 F.2d 585, 589 (5th Cir.1981), *cert. denied*, 459 U.S. 854, 103 S.Ct. 121, 74 L.Ed.2d 105 (1982). Clearly, joinder was proper under Rule 8(b), as Piaget and Stewart were involved in the same transaction. The issue, then, is whether the district court abused its discretion in denying severance under Rule 14.

In general, defendants who are indicted together should be tried together. *United States v. Harrelson*, 754 F.2d 1153, 1174 (5th Cir.), *cert. denied*, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985); *United States v. Michel*, 588 F.2d 986, 1001 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979). This court's policy of encouraging joinder of defendants means that Piaget would have to show that he was "unable to obtain a fair trial without a severance" in order to succeed on his appeal. *Harrelson* at 1174 (quoting *U.S. v. Crawford*, 581 F.2d 489, 491 (5th Cir.1978) and *U.S. v. Swanson*, 572 F.2d 523, 528 (5th Cir.), *cert. denied*, 439 U.S. 849, 99 S.Ct. 152, 58 L.Ed.2d 152 (1978)). Furthermore, he would have to " 'demonstrate compelling prejudice against which the trial court [was] unable to afford protection.' " *Harrelson* at 1174 (quoting *Crawford* at 491).

Specifically, Piaget contends that his defense regarding the gray canvas bag—that he did not know its contents—conflicted with Stewart's defense—that Stewart unknowingly possessed the bag. The district court judge ruled that these two defenses were not mutually incompatible, and we find no abuse of discretion in his decision.

Piaget also argues that the spill over effect of certain evidence regarding massive narcotics trafficking by Stewart is sufficient reason for reversal of the district court's denial of severance. This court has said that the effect of spill over evidence is best avoided by precise instructions to the jury. Such instructions obviate the spill over effect. *Harrelson* at 1175 (quoting *United States v. Morrow*, 537 F.2d 120, 136 (5th Cir.1976), *cert. denied*, 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977)). Piaget relies on the fact that the trial court has discretion to grant severance even if joinder is proper under Rule 8(b). *United States v. Gutierrez–Chavez*, 842 F.2d 77 (5th Cir.1988). While this is admittedly true, it is also true that the trial court has discretion to deny Rule 14 severance with proper Rule 8(b) joinder. We find that any spill over effect could be cured by limiting instructions, and thus that the trial court did not abuse its discretion in not severing the two defendants. *See United States v. Loalza–Vasquez*, 735 F.2d 153, 159 (5th Cir.1984); *United States v. Avarello*, 592 F.2d 1339, 1346 n. 10 (5th Cir.), *cert. denied*, 444 U.S. 844, 100 S.Ct. 87, 62 L.Ed.2d 57 (1979).

### III.

For the foregoing reasons, we affirm the conviction of the district court.

AFFIRMED.