FILED
United States Court of Appeals
Tenth Circuit

July 16, 2025

Christopher M. Wolpert
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ALEX VALLEJOS,

    Defendant - Appellant.

No. 24-2065
(D.C. No. 1:20-CR-01940-WJ-2)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **MURPHY**, and **EID**, Circuit Judges.
_____

Alex Vallejos pleaded guilty to possession of over 500 grams of cocaine with

the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B). He entered

his plea on the condition that he could appeal the district court's denial of his motion

to suppress evidence—in particular, a red box containing cocaine and statements he

made to Drug Enforcement Administration agents about the box—that the agents

obtained during a traffic stop. On appeal, Vallejos argues the agents' warrantless

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures. He further asserts that the agents violated his *Miranda* rights by questioning him about the box before advising him of those rights.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's denial of the suppression motion. We conclude that the totality of the circumstances—including the suspicious nature of Vallejos's meeting with a known drug supplier at a public park, the DEA's multi-year investigation leading up to the meeting, and the agents' previous experience with and specialized training in observing drug deals—gave the agents probable cause to search Vallejos's vehicle. Further, because Vallejos was not in custody during the questioning, there was no *Miranda* violation.

## I.

In September 2018, DEA agents began investigating Arturo Ruiz, a known drug distributor. They ran several staged drug deals with Ruiz as part of their effort to identify his supplier. During these transactions, the agents noticed another individual—Eustacio Montoya—was consistently present near the purchase location and the location where they believed the drugs were stored. They believed Montoya was supplying Ruiz with drugs, monitoring the transactions, and collecting a share of the proceeds.

Throughout the investigation, the agents monitored a phone number (the "5082 number") that was in frequent communication with Montoya. They learned the 5082 number was subscribed to a Paul Garcia at an address in Albuquerque, New Mexico.

2

But because they could not locate that name in law enforcement databases, they believed the name or address was false and became suspicious the individual was involved in drug trafficking.

In August 2020, agents surveilling Montoya's house observed a white Kia sedan parked in the driveway. They also saw two unidentified men talking with Montoya. One man left, and the other stayed for approximately half an hour before leaving in the Kia sedan. The agents ran the vehicle's license plates, found a driver's license photograph, and identified the person in the photograph as the same person they had observed in Montoya's driveway—Alex Vallejos. Soon after, one of the agents read in a law enforcement database that Vallejos had previously been arrested for possible cocaine trafficking in 2006.

One month later, agents saw Montoya's truck leave a suspected stash house and drive to a local auto shop, where it stayed for nearly an hour. When Montoya left, he took a three-turn detour from his next destination, which the government characterized as "an effort to evade law enforcement and confirm that no one was following him." App'x Vol. II at 406 (quotation omitted). The agents discovered Vallejos had previously sold drugs at the same auto shop. And soon after, the FBI informed DEA agents that it had conducted controlled drug buys from Vallejos in 2013.

Events came to a head on October 2, 2020. At 2:01 P.M., Montoya texted the 5082 number "Im ready, bud." *Id.* At 2:06 P.M., agents observed Montoya placing a black object in his truck. Ten minutes later, the 5082 number responded "Ok." *Id.*

3

Montoya then placed a red box in his truck, asked the 5082 number "Whats tha add," and began driving after receiving two calls from the number. *Id.*

At 2:53 P.M., after losing track of Montoya's truck for twenty-eight minutes, agents located Montoya at Montano West Park. Montoya received three calls from the 5082 number at 3:01 P.M., 3:02 P.M., and 3:03 P.M., and a white Kia sedan arrived at 3:02 P.M. The driver of the sedan—Vallejos—exited his vehicle, brought a black duffel bag to Montoya's truck, and returned the bag to his car. He then returned to the truck and sat in the passenger seat for nineteen minutes. When Vallejos left, he was carrying a red box, which agents believed was the same box Montoya had loaded into his truck earlier that day.

Agents stopped Vallejos's car after the meeting. To protect the Montoya investigation, they told Vallejos his vehicle matched the description of a car involved in a violent crime in the area and required him to step out of the vehicle and sit on the curb. During their search, they found the red box. Vallejos claimed he did not know what was in the box and that he had just bought a tool from someone. Over Vallejos's protest, agents seized the box because they believed it contained illegal drugs. Agents then briefly handcuffed Vallejos, but ultimately released him from the scene until the contents of the red box were tested. Laboratory tests confirmed the red box contained approximately one kilogram of cocaine. After the encounter ended, agents discovered they had not returned Vallejos's driver's license. They brought it back to the address listed and gave the license to Vallejos's wife.

4

Vallejos was charged with one count of conspiracy to possess with the intent to distribute cocaine in violation of 21 U.S.C. § 846 and one count of possession with the intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).  Vallejos moved to suppress the evidence, arguing the agents (1) lacked probable cause to search his vehicle and (2) violated his *Miranda* rights when they questioned him about the contents of the red box during the traffic stop. The district court denied the motion, reasoning (1) there was ample evidence of drug trafficking to establish probable cause for the search and (2) Vallejos was not in custody during the stop, so *Miranda* warnings were not necessary.

Vallejos entered a conditional guilty plea that allowed him to appeal the denial of his motion to suppress.[1]  This is his appeal.

## II.

Vallejos first argues that the agents' warrantless search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures. Because the agents' conduct falls within the automobile exception to the Fourth Amendment's warrant requirement, we disagree.

Following the denial of a motion to suppress evidence, we review the district court's legal determinations de novo and its factual findings for clear error.  *United States v. Soza*, 643 F.3d 1289, 1291 (10th Cir. 2011).  A district court's factual finding is made in clear error only if "the error [is] pellucid to any objective

---

[1] As part of Vallejos's plea agreement, the government agreed to move to dismiss the conspiracy charge.  App'x Vol. II at 427.

observer," the finding is "without factual support in the record," or the panel is "left with a definite and firm conviction that a mistake has been made." *United States v. Madrid*, 713 F.3d 1251, 1256–57 (10th Cir. 2013) (quotations omitted). In conducting this review, we view the evidence in the light most favorable to the government. *United States v. Shuck*, 713 F.3d 563, 567 (10th Cir. 2013).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The "basic purpose of this Amendment" is to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Carpenter v. United States*, 585 U.S. 296, 303 (2018) (quotation omitted). "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (quotation omitted).

One such exception involves searches of automobiles. We have long held that "police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant." *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (quotation omitted). Officers must limit the search to areas "therein that might contain contraband." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008) (quotation omitted).

"Probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." *Id.* at 1344 (quotation omitted). We understand the "fair probability" standard "to mean something more than a 'bare suspicion' but less than a preponderance of the evidence at hand." *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014). And we allow officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotation omitted).

Here, the combination of facts known to the agents gave them reason enough to believe the red box in the vehicle contained illegal drugs. Before the stop, the agents' investigation revealed Montoya was a drug supplier. It also showed Montoya used his phone to set the time and location of drug deals. And Montoya's communications with the 5082 number on the day of the drug deal—which included discussion of a time, a request for a location, and three phone calls that coincided with the arrival of the white Kia sedan at a public park—all support the agents' conclusion that this was a pre-arranged meeting between Montoya and a potential buyer.[2]

---

[2] Vallejos established at the district court that the 5082 number was subscribed to another individual—Paul Garcia—who should have been identified in the agents' database. But based on the timing of the texts and phone calls between Montoya and the 5082 number leading up to the transaction, the agents could have reasonably believed Vallejos was simply using a phone subscribed to someone else's name.

Vallejos correctly notes that mere association with a criminal is insufficient to establish probable cause. Aplt. Br. at 18–19 (citing *Ybarra v. Illinois*, 444 U.S. 85, 90–92 (1979); *United States v. Anderson*, 981 F.2d 1560, 1566 (10th Cir. 1992)). But as the district court noted, the agents had evidence beyond mere association:

> [M]eeting up with an acquaintance known to frequent the sites of drug purchases, choosing a public park as a meeting place but staying in or near vehicles rather than entering the park itself, transporting a black duffel bag to the acquaintance's truck and then back to one's own car, returning to the acquaintance's truck to sit for nineteen minutes, retrieving a box that resembled one that the acquaintance had placed in his truck shortly before the trip, and bringing it back into one's own vehicle before driving away . . . is far more indicative of an underhanded transaction.

App'x Vol. II at 411.

The Fifth Circuit's decision in *United States v. Piaget* further supports this conclusion. 915 F.2d 138 (5th Cir. 1990). There, a man who—like Montoya—had been under government investigation for drug offenses placed a gray canvas bag in his truck and then met the defendant in a parking lot. *Id.* at 139–40. The man handed the gray canvas bag to the defendant, who then placed the bag in his trunk and drove toward Dallas, Texas before being stopped and searched by police. *Id.* at 140. The court concluded these facts were sufficient to establish probable cause to search the defendant's car. *Id.*

Vallejos attempts to distinguish *Piaget*, noting the officer in that case had a confidential informant who told him the drug trafficker was planning to send drugs to

---

Accordingly, Vallejos's argument that the agents' belief that "the phone was subscribed falsely cannot be used to support probable cause" fails. Reply Br. at 3.

Dallas. But though the agents in this case did not have a confidential informant, they did not need one. The circumstances surrounding the transaction, as discussed above, independently support a finding of probable cause without the additional information of where Vallejos was headed after the transaction.

Further, Vallejos's reliance on other out-of-circuit cases is misplaced. In *United States v. Davis*, which presents otherwise similar facts to this case, the defendant did not receive anything from the drug dealer under investigation. 430 F.3d 345 (6th Cir. 2005). Thus, the officers knew only that (1) the defendant met with a suspected drug dealer, (2) others who had met with the dealer had later been found with drugs, and (3) there were detergent boxes near the meeting, which had been used in previous drug deals. *Id.* at 352. The court specifically distinguished *Davis* from other cases in which a defendant left the meeting carrying a bag or container, as Vallejos did here. *Id.* at 353 n.1.

Similarly, *United States v. Drakeford* does not support Vallejos's position. 992 F.3d 255 (4th Cir. 2021). There, nothing was exchanged between the defendant and the drug supplier. Rather, officers justified their search using attenuated facts, such as the defendant's picking up of a suspicious bag five to seven days before the search. *Id.* at 259. Further, the meeting occurred in broad daylight in front of a security camera. *Id.* at 259–60. And after the meeting concluded, the participants went on a normal shopping trip together, leaving their vehicles unattended. *Id.* at 265. *Drakeford* is thus easily distinguishable from this case: Montoya retrieved the

9

red box on the same day it was transferred to Vallejos; the meeting occurred at a public park; and the parties left soon after the transfer occurred.

The last case on which Vallejos relies—*United States v. Spears*—is similarly unavailing. 636 F. App'x 893 (5th Cir. 2016) (unpublished). There, the court found no probable cause where law enforcement stopped and searched a defendant's car after he was seen leaving a house under surveillance for drug trafficking. *Id.* at 895–97. In making this determination, the court noted that the positioning of the defendant's vehicle made it impossible for officers to see whether the defendant left his car or even interacted with anyone while parked at the suspicious house—an important detail not present in Vallejos's case. *Id.* at 896. Thus, the officers' search in *Spears* was based on a "mere hunch," rather than probable cause. *Id.* at 898 (quotation omitted).

None of the cases cited by Vallejos involved a defendant who had a suspicious interaction at a public park during which he took a container from a man under a multi-year investigation for supplying drugs. Probable cause in the automobile context does not require a certainty of criminal activity associated with a vehicle; rather, it requires a "fair probability that the car contains contraband." *Chavez*, 534 F.3d at 1344. And here, the totality of the circumstances leading up to the deal and the suspicious nature of the interaction itself established a fair probability that the red box contained illegal drugs. Accordingly, the district court properly denied Vallejos's motion to suppress evidence of the box.

**III.**

Vallejos next argues that the agents violated his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), by questioning him about the contents of the red box during the traffic stop without first advising him of his rights. Because Vallejos was not in custody during the questioning, we disagree.

We review de novo the question of whether *Miranda* applies. *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). "*Miranda* warnings are required only 'at the moment [the] suspect is in custody and the questioning meets the legal definition of interrogation.'" *United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020) (quoting *Jones*, 523 F.3d at 1239). The parties do not dispute that the agents' questioning constituted an interrogation. Accordingly, we address only the requirement that a suspect be "in custody."

"An interrogation is custodial when, in light of the objective circumstances of the interrogation, a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *Id.* (quotation and internal quotation marks omitted). A suspect "is not in custody when he voluntarily cooperates with the police." *Id.* (quotation and internal quotation marks omitted). Generally, suspects detained during ordinary traffic stops "are not 'in custody' for the purposes of *Miranda*." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984). Only when "a suspect's freedom of action is curtailed to a degree associated with formal arrest" is the suspect in custody. *Id.* (quotation and internal quotation marks omitted).

"The determination of custody, from an examination of the totality of the circumstances, is necessarily fact intensive." *Jones*, 523 F.3d at 1240 (quotation omitted). We have previously considered the following factors: (1) "the extent . . . the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will," (2) "the nature of the questioning," (3) the extent police officers "dominate the encounter," and (4) "the release of the suspect at the end of the questioning." *Wagner*, 951 F.3d at 1250 (citation modified). "Officers may 'dominate' an encounter by displaying a weapon, making physical contact, isolating the suspect in a police-controlled environment, or appearing in overwhelming numbers." *Id.*; *see Jones*, 523 F.3d at 1239.

Vallejos makes no attempt in his opening brief to explain what particular facts would indicate the district court's conclusion that he was not "in custody" was improper. Instead, he spends his one-and-a-half-page discussion about *Miranda* laying out the basic rules from that case. But even if we perform the application of those rules on his behalf, his freedom of action was not "curtailed to a degree associated with formal arrest." *Berkemer*, 468 U.S. at 440 (quotation and internal quotation marks omitted). The agents did not tell Vallejos he was under arrest, nor did they give him reason to believe he would not be permitted to leave at the conclusion of the search (as indeed he was). Further, Vallejos has not argued the agents were coercive or threatening in their questioning. The agents did not draw their weapons, order Vallejos to the ground, or use any physical force before or during the questioning. And though the agents handcuffed Vallejos, they did not do

12

so until after they asked him about the contents of the red box. Moreover, despite the agents' suspicion that the red box contained illegal drugs, they released Vallejos after the encounter. Law enforcement arrested Vallejos only after a laboratory test confirmed the red box contained cocaine.

In sum, Vallejos points to no facts that plausibly suggest he was "in custody" when the agents questioned him about the contents of the red box. His encounter with the agents did not involve weapons, force, or other forms of coercion. And he was released soon after the encounter began. Accordingly, the agents were not required to give *Miranda* warnings during the stop.

**IV.**

We AFFIRM the district court's denial of Vallejos's suppression motion.

Entered for the Court

Allison H. Eid
Circuit Judge