**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David GUTIERREZ,
Defendant–Appellant.**

No. 87–1758.

United States Court of Appeals,
Fifth Circuit.

July 1, 1988.

Rehearing and Rehearing En Banc
Denied Aug. 24, 1988.

Charles Louis Roberts, Robert Ramos, El Paso, Tex., for defendant-appellant.

LeRoy Morgan Jahn, Asst. U.S. Atty., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellee.

Before BROWN, KING and HIGGINBOTHAM, Circuit Judges.

KING, Circuit Judge:

David Gutierrez entered a conditional guilty plea to both counts of an indictment charging, in Count One, that he unlawfully possessed marijuana with the intent to distribute and, in Count Two, that he travelled in interstate commerce to facilitate an unlawful activity involving controlled substances. On appeal, Gutierrez challenges the district court's denial of his motion to suppress evidence. Finding no merit in Gutierrez's arguments with respect to the suppression motion, we affirm the judgment of conviction and sentence on Count One. The government concedes, however, that Gutierrez's conviction on Count Two must be vacated. Therefore, we reverse the judgment of conviction and vacate the sentence imposed on that count. The sentence on the reversed count having been concurrent with the sentence on the affirmed count, we need not remand for re-sentencing.

I.

On April 14, 1987, United States Border Patrol agent Joe Castillo ("Castillo") was assigned to duty at the El Paso International Airport.[1] At approximately 6:45 a.m., Castillo observed David Gutierrez ("Gutierrez") and another individual, later identified as Miguel Martinez ("Martinez"), approach the United Airlines entrance to the terminal. As the pair was crossing the street from the short-term parking lot towards the terminal, they appeared to notice Castillo watching them. Approaching the terminal, they continued to keep an eye on Castillo as if to confirm that he was indeed observing them. As the pair got closer, they quickly broke eye contact and proceeded to the United Airlines ticket counter in the terminal. While standing in line, the pair kept glancing back in Castillo's direction. Gutierrez was carrying a brown suitbag while Martinez carried a blue suitcase. Castillo noted that the blue suitcase was of the same type that had been involved in prior marijuana seizures at the airport—a hardshell, flexible American-Tourister type. Castillo observed Gutierrez check the brown suitbag and watched as Martinez placed the blue suitcase next to the brown bag in order to have the suitcase checked along with the suitbag.

At that point, Castillo and Border Patrol agent Major proceeded to the United Airlines baggage area and took the blue suit-

---

1. In reviewing a district court's ruling on a motion to suppress based on testimony at a suppression hearing, we must accept the district court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. *United States v. Maldonado*, 735 F.2d 809, 814 (5th Cir.1984). Further, we must view the evidence in the light most favorable to the party that prevailed below. *Id.* Therefore, this opinion will reflect, in large measure, the factual findings of the district court below. Those findings are supported by the testimony at the suppression hearing and are, for the most part, undisputed.

case from the conveyor belt. The agents compressed the sides of the suitcase in order to expel air from the bag, and detected an odor of talcum powder. Castillo knew of four or five prior situations in which contraband smugglers had tried to mask the smell of marijuana by using talcum powder. Consequently, Castillo became suspicious that the blue suitcase might contain marijuana and decided to follow Gutierrez and Martinez to the United Airlines boarding area in order to ask the pair some questions. At approximately 7:10 a.m., Castillo caught up with the two men at the departure gate, identified himself and asked the citizenship of each man.[2] Both replied that they were American citizens and, after Castillo requested identification, produced Texas drivers' licenses. When asked by Castillo whether he had checked any suitcases, Gutierrez at first said no, paused, and then said yes, that he had checked just one suitbag. In response to a similar question, Martinez replied, "No, I am just seeing my friend off." Castillo then asked Gutierrez if he had a United Airlines ticket. Gutierrez presented Castillo with a ticket to Anchorage, Alaska in Gutierrez's name. Upon closer examination, Castillo noticed that there were two baggage claim tags stapled to the ticket folder.

The agents asked the two men to accompany them to the Border Patrol office in order to answer some questions about a suitcase Castillo had observed them check in. Gutierrez was advised of his rights and, when shown the suitcase and suitbag, denied any ownership of the suitcase. Martinez also disclaimed ownership of the suitcase. Castillo once again asked to examine Gutierrez's ticket folder and noticed that there was now one baggage claim ticket missing—the one belonging to the brown suitbag. The agents then requested the services of a narcotics detection dog from the El Paso Police Department. The dog arrived at approximately 7:50 a.m. and alerted to the blue suitcase on three separate occasions, indicating the presence of a controlled substance. The suitcase was la-

ter opened and was found to contain approximately twenty-nine pounds of marijuana. After the canine sniff, Gutierrez was taken to the Border Patrol Headquarters in El Paso where he once again disclaimed ownership of the suitcase.

On May 5, 1987, a federal grand jury returned a two count indictment charging Gutierrez with several violations of federal narcotics laws. Count One charged that Gutierrez "unlawfully, knowingly, and intentionally did possess with intent to distribute a quantity of marijuana, a Schedule I Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1)." Count Two alleged that Gutierrez used a facility in interstate commerce with the intent to promote, carry on and facilitate the promotion and carrying on of an unlawful activity involving controlled substance offenses, in violation of the Travel Act, Title 18, United States Code, section 1952. On July 1, Gutierrez filed a motion to suppress all evidence obtained from him as a result of the airport incident. The district court denied Gutierrez's motion on July 27. Consequently, on September 15, Gutierrez entered a conditional plea of guilty to the charges against him, reserving the right to appeal the denial of his suppression motion. The district court sentenced Gutierrez to a two year term of imprisonment, to be followed by a five year special parole term, on Count One. On Count Two, the district court sentenced Gutierrez to two years imprisonment, to be served concurrently with the term of imprisonment imposed on Count One. Moreover, pursuant to Title 18, United States Code, section 3013(a), the district court ordered Gutierrez to pay a $50 assessment on each count, for a total of $100. Gutierrez then filed timely notice of appeal.

## II.

On appeal, Gutierrez argues first that the agents' compression and sniff of his bags constituted an illegal seizure or search since the agents did not have probable cause to believe that the blue suitcase contained narcotics. "We have recently

2. Gutierrez's flight was scheduled to depart at 7:22 a.m.

held, however, that a Border Patrol agent's removal of a suspect's bag from an airport baggage area conveyor belt, his squeeze of the bag to procure a scent, and his subsequent sniff of that bag constituted neither a seizure nor a search." *United States v. Garcia*, 849 F.2d 917, 919 (5th Cir.1988) (citing *United States v. Lovell*, 849 F.2d 910, 912–13 (5th Cir.1988)). *Lovell* and *Garcia* dispose of Gutierrez's argument.

Next, Gutierrez takes issue with the district court's finding that he abandoned the suitcase. When first approached by the agents, Gutierrez was asked whether he had checked any suitcases; Gutierrez first replied that he had not, and then changed his response to indicate that he had just checked a suitbag. Martinez, when asked the same question, replied that he had not checked any suitcases and was just seeing Gutierrez off. Gutierrez did not comment on Martinez's denial of responsibility for the blue suitcase. Further, when Gutierrez handed the agents his ticket, there were two baggage claim checks attached to the ticket envelope. Under the circumstances, we can find no clear error in the district court's conclusion that Gutierrez abandoned the suitcase.[3] Therefore, we find no error in the district court's conclusion that Gutierrez cannot now challenge the subsequent search of the suitcase, having abandoned it. The district court did not err in denying Gutierrez's motion to suppress.

While Gutierrez does not raise the argument on appeal, the government concedes that under our recent decision in *United States v. Hernandez–Palacios*, 838 F.2d 1346 (5th Cir.1988), Gutierrez's conviction

on Count Two for violating the Travel Act must be vacated. Therefore, while we affirm the district court's judgment of conviction and sentence as to Count One, we must reverse the judgment of conviction and vacate the two year term of imprisonment and $50 assessment imposed on Count Two. As the sentence imposed on Count Two was to run concurrently with the sentence imposed on Count One, resentencing is not necessary. A copy of this opinion is, however, to be attached to the judgment so that prison authorities and the parole board will have accurate information regarding the offense for which Gutierrez stands convicted.

### III.

For the foregoing reasons, the judgment is AFFIRMED IN PART and REVERSED AND RENDERED IN PART.

---

**3.** We note that Gutierrez's abandonment was in no way the product of any improper police conduct. *See, e.g., United States v. Beck*, 602 F.2d 726, 728 (5th Cir.1979). We have held that the agents' actions leading up to their contact with Gutierrez—squeezing and sniffing the suitcases—were not unlawful. *See Garcia*, at 919; *Lovell*, at 912. Moreover, when Gutierrez abandoned his suitcase, the agents were engaged simply in asking him questions in a public place, perfectly permissible under the fourth amendment. *See United States v. Gonzales*, 842 F.2d 748, 752 (5th Cir.1988); *United States v.*

*Hanson*, 801 F.2d 757, 761 (5th Cir.1986) (fourth amendment seizure did not take place where the officers merely approached the defendant, displayed their badges, and asked questions); *United States v. Berry*, 670 F.2d 583, 603 (5th Cir. 1982) (en banc) (where officers approached suspect, asked to speak with him, and requested identification, the fourth amendment was not implicated). Therefore, Gutierrez's abandonment of his suitcase was not tainted by any fourth amendment violations on the part of the agents; that abandonment occurred well before Gutierrez was either "seized" or placed under arrest by the agents.