**UNITED STATES of America, Plaintiff,**

v.

**Jon MENDEZ, Defendant.**

**Crim. No. H–93–93.**

United States District Court, S.D. Texas.

Aug. 5, 1993.

Brad Howard, Asst. U.S. Atty., Houston, TX, for plaintiff.

Peter Heckler, Houston, TX, for defendant.

### OPINION ON SUPPRESSION

HUGHES, District Judge.

1. *Introduction.*

After he became a target because of a dog's response to a separate checked suitcase this air passenger could not be removed from his departing flight and interrogated about his ticket, identification, luggage, and plans without being arrested and advised of his constitutional rights. In this case, government agents chose expediency over the Constitution. The government went beyond a temporary detention and trapped him into an abandonment of a suitcase that they knew to be his. Because the drugs in the bag were found through an unconstitutional search, they will be suppressed.

2. *Facts.*

In the spring of 1993, three city police officers were on duty at Houston's Hobby Airport looking for drug carriers. Jon Mendez, a young, tall, thin Hispanic man walked through the terminal. Officer D.V. Luis believed his behavior, appearance, and luggage fit certain drug courier characteristics. She mentioned:

- The luggage appeared new and to be too heavy for him;
- He looked extremely nervous before entering the gate area, continually looking side to side and over his shoulder;
- He arrived twenty minutes before his flight was scheduled to depart; and
- He purchased a one-way ticket from a source city to a demand city.

Mendez checked his bag and boarded the airplane for New York. The police retrieved the locked suitcase from TWA; an alert for drugs was made by a police dog. Officers Luis and Hardy boarded the New York

flight. Luis identified herself as a police officer and asked Mendez for his ticket, identification, and whether he had checked a suitcase.

Mendez showed the officers his ticket, which was on the seat next to him, said he had no identification, and said that he had checked a suitcase. The police took the ticket, saw that the ticketed name matched the name tag on the suitcase, and asked Mendez to accompany them off the airplane, which was minutes from its scheduled departure. Mendez was not given any warning about his constitutional rights. As they walked to the baggage area, the police became concerned that Mendez might try to flee, and officer Hardy kept a grip on his belt loop until they were out of the main concourse. The officers questioned him during the long walk. The officers took him hundreds of yards from his flight and out of the boarding area into a different part of the airport entirely.

When the police asked to search his luggage, Mendez answered that they could look in the bag he was carrying but that the suitcase in front of him was not his suitcase—that his was yellow. Having been briefed on the opportunity afforded by a disclaimer, the police took his denial as an abandonment of the bag and opened it; they found bundles of cocaine. At this point the police formally arrested Mendez and read him his constitutional rights. The police never made an effort to obtain a search warrant for the bag.

### 3. *The Arrest.*

 Law enforcement officers may approach an individual in a public area and ask if he is willing to answer some questions. The individual is not required to participate in the questioning, and a person's silence is not a sufficient reason to detain him. When the situation indicates to a reasonable person that he is not free to resume his business, a mere investigatory stop has escalated to an arrest, even if a formal arrest has not been announced by the police. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

 The government says that it had not arrested Mendez. It asserts that Mendez voluntarily gave up his ticket and missed his flight in a casual effort to satisfy the officers' desire to visit with him far from the gate. Mendez, surrounded by two police officers in the cramped quarters of an airplane, had his ticket confiscated and was taken off a departing aircraft to answer questions by self-identified narcotics agents. *Cf. United States v. Morin,* 665 F.2d 765, 769 (5th Cir.1982) (being brought out of a restroom by a group of officers is an element in whether an arrest has been made). Furthermore, the officer's action in restraining Mendez by the beltloop as they walked through the airport is wholly inconsistent with a brief detention stop. *See Terry,* 392 U.S. 1, 88 S.Ct. 1868. A reasonable person in Mendez's position would understand that his situation constituted a restraint on the freedom of movement of the degree the law associates with formal arrest. *United States v. Bengivenga,* 845 F.2d 593, 600 (5th Cir.), *cert. denied,* 488 U.S. 924, 109 S.Ct. 306, 102 L.Ed.2d 325 (1988). *See also United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

The safety of the passengers on the airplane was not a concern to the officers, as officer Luis admitted. *Compare United States v. Sanders,* 994 F.2d 200, 207–08 (5th Cir.1993). Obviously Mendez was unarmed since he had been through a magnetometer. Taking Mendez off the plane with no imminent threat to public safety was an arrest. *See Florida v. Royer,* 460 U.S. 491, 496, 103 S.Ct. 1319, 1323, 75 L.Ed.2d 229 (1983). The officers' conduct went beyond their limited legal opportunity to approach an individual and ask questions of a general nature. Once an individual is no longer in a position to exercise his right to discontinue a further intrusion into his personal affairs, he is arrested. Any detention must be brief and nondisruptive to be something less than an arrest. *See United States v. Hill,* 626 F.2d 429, 434 (5th Cir.1980); *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Mendez was illegally arrested and falsely imprisoned when the officers deliberately detained Mendez longer than needed for general questioning and involuntarily

impeded his travel by intentional force of will and intimidation.

### 4. *Probable Cause.*

■ No probable cause supported the arrest of Mendez. At the time of the arrest, the only evidence the officers had was the alert of the dog to the suitcase and the drug courier characteristics of Mendez. Reliance on selected characteristics is not necessarily unreasonable; officers have some basis for focusing on behavior that has recently tended to have been associated with drug trafficking. Among the thousands of travelers who pass through Houston's airports each day are undoubtedly a few criminals. Unfortunately their bags do not just fall open, revealing their contents. *See, e.g., United States v. Hahn,* 849 F.2d 932, 934 (5th Cir.1988); *United States v. Fernandez,* 887 F.2d 564, 567 (5th Cir.1989). The availability of profiles, however, has led to gratuitous after the fact justifications by a recitation of factors that would apply to travelers in general. *See, e.g., United States v. Berry,* 670 F.2d 583, 598 & n. 17 (5th Cir.1982).

If locking your suitcase is a characteristic of a courier, if arriving close to the flight time is a characteristic of a courier, if looking nervous is a characteristic of a courier, we are all likely couriers. The officer could not have known the suitcase was locked from distant observation. Here, arriving late is suspicious; in another case, arriving early may be a trait of courierhood. The light traveler is often suspicious, but here, the "too heavy" suitcase triggers interrogation. *Cf. Elmore v. United States,* 595 F.2d 1036, 1039 n. 3 (5th Cir.1979), *cert. denied,* 447 U.S. 910, 100 S.Ct. 2998, 64 L.Ed.2d 861 (1980).

■ To qualify as an element of a lawful profile, there must be a strong correlation between the trait and the incidence of criminal activity, with the opposite act not also being a trait. Buying a round-trip ticket cannot be suspicious if buying a one-way ticket is also suspicious. This aspect of narrowness is obviously absent in the element of a person who is travelling from a source city to a demand city. By that criteria, the 3,000 people who could take one of the twenty weekday nonstop flights from Houston's two airports to New York's three are likely couriers. Even if the pool of suspicious characters is limited to those travelling light and heavy and those arriving late or early, the result is absolute police power over all travellers.

■ In fact, the alert by the dog may also be a problem when used as probable cause to make an arrest. Dogs alert to the odor from trace amounts in bags and money of unsuspecting, innocent persons from drugs long gone. The alert is only probable cause to apply for a search warrant; it is not enough to allow the police immediately to open the suitcase without first getting a warrant. It, alone, cannot be probable cause for an arrest.

■ Among the officers' lawful alternatives, they could have asked for permission to search his luggage in general, brief questioning. Also, the suitcase could be held for a short time for the police to apply for a search warrant, and if issued by the magistrate, find the drugs and have New York police arrest Mendez on his arrival. Officer Luis admitted that she wanted to get the credit for the arrest; bureaucratic honor cannot come at the expense of the constitutional limits on governmental power.

Without proof of contraband, the officers had no probable cause to support an arrest of Mendez without a warrant. The officers continually and knowingly proceeded improperly; their misconduct constituted an illegal arrest. The statements Mendez made, as well as the evidence seized by the officers without a warrant, are the product of that illegal arrest, and they must be suppressed.

### 5. *Warnings.*

■ Because of the current state of the law, having the dog inspect your luggage based on an inarticulable hunch is legal, but even with the drug war's erosion of the protectable liberty of individuals, those suspicions are not probable cause for the arrest of the person. Once an alert has been made, the officers can make a warrantless arrest as long as the detection of the odor is accompanied by strong additional indicia of probable illegal activity. *See United States v. Garcia,* 849 F.2d 917 (5th Cir.1988); *United States v.*

*Gutierrez,* 849 F.2d 940 (5th Cir.1988); *United States v. Fernandez,* 887 F.2d 564 (5th Cir.1989). This case has virtually no trait evinced by Mendez to reinforce the dog's alert. The things about him that the police say attracted their attention are not suspicious individually or aggregately.

■ Even if the arrest were legal, the failure to advise Mendez of the constitutional limits on the authority of the police taints the seizure. The Constitution requires the police to advise individuals of their rights before an interrogation. An individual may not be compelled to be a witness against himself. "That right cannot be abridged." *Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694 (1966). All that was required to alleviate any doubt about an interrogation is the reading of a warning of six small words: You have a right to refuse.

No arguable law enforcement interest, no "necessity", makes the officers' violation of their oath of office excusable by the apologist for governmental power. U.S. CONST., art VI. Their duty was clear and their opportunity to comply ample, indeed, abundant. The test is objective, not the subjective good faith belief of the officer. The obligation to warn has been one of the most publicly debated issues for the last twenty-seven years at least. No city police officer can be unaware of the constitutional requirement to read a suspect his rights. Infrequent viewing of television drama would fully inform anyone of the requirement and practice.

The circumstances of Mendez's involuntary custody compel the conclusion that he was purposely not alerted to his rights in order to get an incriminating statement, whether an admission or denial. The purpose was achieved in his statement that the suitcase was not his, allowing the police to open it without a warrant. The officers were in good faith aware of the rule of law that allows search of abandoned luggage but were not current on the historic requirement of warning suspects. Indeed, the conclusion of abandonment from one passenger's disclaimer is speculative and error prone.

The officers asked Mendez whether the suitcase was his after he had been taken from the aircraft, taken from the departure concourses, taken from the public areas, held however tentatively by the belt loop, questioned pointedly, and confronted with a suitcase that might not have been his in hostile surroundings. Unless the person's constitutional rights are established by the officers' recognition of them through the process of recitation, the imposing stance of law enforcement officers blocking any retreat to a status quo would compel a reasonable person to answer. *Cf. Bengivenga,* 845 F.2d at 599–600.

### 6. *Abandonment.*

■ The government contends that Mendez abandoned the suitcase when he stated that it was not his, that his suitcase was yellow. When an individual abandons an object in response to an officer's violation of his constitutional rights, the violation taints the abandonment making it involuntary. *See United States v. Beck,* 602 F.2d 726, 729 (5th Cir.1979). Abandonment is voluntary if it is done during brief questioning in public areas. *See United States v. Karman,* 849 F.2d 928 (5th Cir.1988); *United States v. Gutierrez,* 849 F.2d 940 (5th Cir.1988). *Cf. United States v. Garcia,* 849 F.2d 917 (5th Cir.1988) and *United States v. Piaget,* 915 F.2d 138 (5th Cir.1990) (suppression denied because there was no evidence that the abandonment was tainted by improper conduct).

The whole supposition of abandonment is out of place in this instance. Nothing was found along the roadside. Nothing was discovered by the officers. The luggage was deliberately taken from a the regular process of shipment in connection with someone's passage aboard the aircraft. The luggage was properly tagged for its shipment with hundreds of other bags. The police were not uncertain about ownership; they had been careful to watch Mendez check the suitcase and then to retrieve it from the airline. The *only* purpose of the question was to trap the passenger into a confession or a "technical" abandonment, leading in either case to a contra-constitutional search and arrest.

The connection between the officers' unlawful conduct and Mendez's disclaimer of the suitcase was direct.

*Miranda* rights were not given. Subsequently, [the] defendant was questioned about luggage about which the police officer knew. The police officer was deliberately seeking an admission that [he] had other luggage containing drugs. When [he] denied having other luggage, the officer searched the bag ... on the theory that the luggage was abandoned.

\* \* \* \* \* \*

Since [the] defendant was not informed of his *Miranda* rights prior to the moment he disclaimed the luggage, the statement of abandonment which he made in response to interrogation ... should have been suppressed.

*United States v. Morin,* 665 F.2d 765, 771 (5th Cir.1982).

The evidence of the illegal contents of the suitcase is the product of an unconstitutional search, and it will be suppressed. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

7. *Conclusion.*

There are those who find it difficult to maintain constitutional standards when the cost appears to be escape for a probable crook. The cost of the right to be free from unreasonable searches is highly visible, but the benefits are virtually invisible because there is no headline about all of the illegal searches of innocent people, much less are there television news programs about all of the illegal searches of innocent people that do not occur because the benefits to the government are made useless by the Constitution. It is only when the government finds something that is incriminating that a case is brought in which the evidence can be excluded.

By requiring the government to follow the law in the most distasteful of circumstances, the homes, bodies, and papers of the law-abiding are protected. Although "the public has a compelling interest in identifying by all lawful means those who traffic in illicit drugs for personal profit," this compelling goal must be accomplished by the government within the constitutional limits, as always. *Royer,* 460 U.S. at 508, 103 S.Ct. at 1329 (Powell, J. concurring). The government's

power is not augmented by the popularity of its activity. Identification of drug traffickers cannot be accomplished by searching all of us, nor by searching any of us without the government's following the law. Two wrongs do not make a right.