IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 93-2528

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

JON MENDEZ,

Defendant-Appellee.

---

Appeals from the United States District Court
for the Southern District of Texas

---

(July 12 1994)

Before REAVLEY, JONES and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

This is an appeal from an order granting a pretrial motion to suppress cocaine discovered during a post-arrest search of appellee's suitcase at an airport. A trained narcotics dog had alerted to appellee's suitcase prior to his arrest and prior to the search of his suitcase. The district court found the arrest illegal and the subsequent search tainted by the failure to give <u>Miranda</u> warnings. In addition, the district court granted the appellee's motion to suppress all statements made by the appellee subsequent to his arrest. The government appeals these rulings. We affirm in part and reverse in part.

## I. FACTS AND PROCEDURAL HISTORY

On March 10, 1993, several Houston Narcotics Division police

officers positioned themselves in the lobby of the Hobby Airport to observe persons leaving on TWA's 12:37 p.m. flight to New York. At the suppression hearing in the court below, Officer D. V. Luis, a Houston police officer assigned to the Hobby Airport Interdiction Squad, explained that Houston is a big "source" city and New York is a "demand" city. Luis testified that she noticed the appellee, Jon Mendez, when he entered the terminal for the following reasons: "he was carrying a fairly large suitcase that appeared to be extremely heavy for him;" "[h]e was there approximately 20 minutes prior to the departure time of the airplane;" and "[h]is bag looked fairly new and it was locked." Mendez checked the suitcase at the TWA counter and proceeded to the departure gate.

Luis then went to the TWA ticket agent and obtained the claim number of the bag Mendez checked. The ticket agent also informed her that Mendez, through a travel agency, had purchased that day a one-way ticket for departure the following day, March 11. Mendez, however, was not taking the flight he originally purchased - instead, he was attempting to fly out the same day he purchased the ticket. Luis gave the information to Officer Hardy, the police canine handler, who went downstairs to the baggage handling area to await the bag and to have a trained dog sniff it for drugs.

At that time, Officers Luis and Mosley proceeded to Mendez' gate of departure. When they arrived at the gate, Mendez had already boarded the plane. The officers waited there until Hardy

advised them that the dog had given a positive alert on the bag.[1] A positive alert on the bag means "[t]hat the dog has alerted on the odor of narcotics." The officers boarded the plane, and Luis recognized Mendez as the man who had checked the bag. She approached him and identified herself as a Houston police officer. Mendez indicated that he did not speak English and so she spoke to him in Spanish. She again informed him that she was a Houston police officer and asked him if he was traveling to New York, and he responded that he was. She asked him if she could look at his ticket, and Mendez "hesitantly produced his ticket, although it was sitting there in front of him." Luis saw that the destination on the ticket was New York and the name on the ticket was "Jonathan Murillo." She also asked him if he had any identification, and he answered that he had none. Luis asked Mendez if he knew any reason why a narcotics dog would alert on his suitcase, and he answered in the negative.

Luis then inquired whether Mendez would mind accompanying them in order to identify the bag, and he complied.[2] Officers Luis and Mosley escorted Mendez to the location of the bag. During this walk, Officer Mosley had his finger in Mendez' belt loop. Luis inquired whether Mendez lived in New York or Houston, and Mendez simply shrugged his shoulders. She further asked him what kind of

---

    [1] Luis testified that if there had been no positive alert on the bag they would not have boarded the plane.

    [2] Luis testified that Mendez would not have been free to remain on the flight. She further testified that she did not believe that at that point there was probable cause "to make a full-blown custodial arrest."

suitcase he had checked, and he asserted that his bag was yellow. The officers knew that was false because they had observed him check his bag.

Officer Maxwell brought out the bag that the officers previously observed Mendez check. The claim check for the bag matched the claim number on the ticket held by Mendez. Upon showing the bag to Mendez, he "stated that it was not his bag." He again claimed that his suitcase was yellow. Luis asked him if that was his bag, which he again denied. She also asked permission to search the bag, and he stated "that [she] could look in his bag, but that was not his bag." She testified that "at that point, feeling that the bag was abandoned, we went on ahead and opened it." The bag contained 14 bundles wrapped in white plastic. A field test was performed, and it tested positive for cocaine. Mendez then was placed under formal arrest, and Luis read Mendez his Miranda[3] warnings. Luis was the only person who testified at the suppression hearing.

After hearing the evidence, the district court found that Mendez had been placed under arrest when he left the plane with the officers. The district court further found that (1) the arrest was illegal because probable cause to arrest did not exist at that time, (2) even if the arrest were legal, the officers' failure to advise Mendez of his Miranda rights tainted the search and seizure, and that (3) Mendez' "abandonment" of his suitcase was a consequence of the officers' failure to warn him of his rights.

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

The district court granted Mendez' motion to suppress the contents of his suitcase and the statements he made after he was taken off the plane.

## II. STANDARD OF REVIEW

When reviewing a district court's ruling on a motion to suppress based on live testimony at a suppression hearing, this Court accepts the trial court's factual findings unless they are clearly erroneous or are influenced by an incorrect view of the law. United States v. Alvarez, 6 F.3d 287, 289 (5th Cir. 1993). The district court's conclusions of law on a motion to suppress are reviewed de novo. Id. Further, the evidence is viewed in the light most favorable to the prevailing party. Id.

## III. THE PROBABLE CAUSE ISSUE

The district court found that Mendez was placed under custodial arrest at the time he was escorted from the aircraft. The government does not contest that finding for purposes of this appeal, and thus, we will assume that conclusion is correct. The government does argue, however, that the district court erred in finding that probable cause to arrest Mendez did not exist at the time he exited the plane.

Probable cause exists where the facts and circumstances within the arresting officers' knowledge are sufficient in themselves to warrant a man of reasonable caution in the belief that the person to be arrested has committed or is committing an offense. United States v. Orozco, 982 F.2d 152, 154 (5th Cir.), cert. denied, __ U.S. __, 113 S.Ct. 2430 (1993).

The district court found that there was no probable cause because "[a]t the time of the arrest, the only evidence the officers had was the alert of the dog to the suitcase and the drug courier characteristics of Mendez." The district court discounted the characteristics noted by Luis on the basis that innocent travelers could display any of the characteristics. The district court opined that "[w]ithout proof of contraband, the officers had no probable cause to support an arrest of Mendez without a warrant." The court further states that "[t]his case has virtually no trait evinced by Mendez to reinforce the dog's alert. The things about him that the police say attracted their attention are not suspicious individually or aggregately."[4]

Contrary to the district court's analysis, "probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause . . . ." Illinois v. Gates, 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 2335 n.13 (1983). In concluding that there was no probable cause to arrest Mendez, the district court erred by failing to realize that the factors the court considered innocent or marginal had a greater significance after the dog alerted on Mendez' suitcase.

Further, the district court failed to consider the following

---

[4] Of course, the circumstances that attracted the attention of the police to Mendez simply resulted in the dog sniffing the suitcase. A dog sniff does not implicate the Fourth Amendment. United States v. Lovell, 849 F.2d 910, 913 (5th Cir. 1988).

-6-

circumstances adduced at the hearing that added to the probable cause calculus:  that on the day he was arrested, Mendez purchased a one-way ticket to depart the next day, but changed his plans and attempted to fly that same day; that Mendez was hesitant to hand his ticket to Luis when she requested it (even though "it was sitting there in front of him"); and that Mendez was making a long trip without any personal identification.[5]  Significantly, the district court did not find that any of the circumstances articulated by Luis did not exist.  Rather, the court apparently did not find them suspicious.

As previously stated, although the district court's factual conclusions must be accepted unless clearly erroneous or influenced by an incorrect view of the law, the probable cause determination is a matter of law and thus, reviewed de novo.  In view of the undisputed facts adduced at the suppression hearing, we find the district court's conclusion that probable cause to arrest had not arisen at the time the officers escorted Mendez from the plane incorrect as a matter of law.  At the time he was taken into custody the arresting officer knew that:  Mendez, on the day he was arrested, had purchased a one-way ticket to depart the next day,

_____

[5]  The government argues that the dog alert on the suitcase is sufficient in itself to constitute probable cause to arrest the person associated with the baggage.  Because there are other factors to support a determination of probable cause to arrest, there is no need to decide if a dog alert alone is sufficient. Other circuits, however, have held that a dog alert provides probable cause to arrest.  See United States v. Williams, 726 F.2d 661 (10th Cir.), cert. denied, 467 U.S. 1245, 104 S.Ct. 3523 (1984); United States v. Waltzer, 682 F.2d 370 (2d Cir. 1982), cert. denied, 463 U.S. 1210, 103 S.Ct. 3543 (1983); United States v. Race, 529 F.2d 12 (1st Cir. 1976).

-7-

but changed his plans and attempted to fly that same day; when the officer requested to see his plane ticket, Mendez hesitated to hand it over even though the officer could see it; a narcotics dog gave a positive alert for drugs in the suitcase that Mendez had checked; Mendez was making a long trip without any personal identification; and that he was flying from a "source" city to a out-of-state "demand" city.  These circumstances taken together were sufficient in themselves to warrant a person of reasonable caution in the belief that Mendez had committed and was committing a narcotics offense.  Accordingly, the arrest was lawful.

## IV.   THE <u>MIRANDA</u> VIOLATION

It is undisputed that the officers did not give Mendez his <u>Miranda</u> warnings at the time he was escorted from the plane.  He was not so advised until after the officers opened the suitcase and discovered the cocaine.  The district court held that even if the arrest were legal, the "seizure" was tainted by the failure to inform Mendez of his <u>Miranda</u> rights.  The government argues that although the prophylactic rule of <u>Miranda</u> was violated, there was no constitutional violation and thus, the district court erred in suppressing the nontestimonial evidence, i.e., the cocaine in the suitcase.  Mendez counters that the government's analysis fails because "[t]here is nothing in the record to suggest that Mendez experienced anything less than a substantive violation of constitutionally protected Fourth and Fifth Amendment interests. The trial court's findings were that the police misconduct, knowing and persistent, was constitutionally impermissible."  The premise

-8-

of Mendez' argument is faulty because it is based on the district court's erroneous conclusion that Mendez' arrest was in violation of the Fourth Amendment.

"A mere violation of Miranda's `prophylactic' procedures does not trigger the fruit of the poisonous tree doctrine. The derivative evidence rule operates only when an actual constitutional violation occurs, as where a suspect confesses in response to coercion." United States v. Barte, 868 F.2d 773, 774 (5th Cir.), cert. denied, 493 U.S. 995, 110 S.Ct. 547 (1989) (citing United States v. Bengivenga, 845 F.2d 593, 601 (5th Cir.), cert. denied, 488 U.S. 924, 109 S.Ct. 306 (1988)). To suppress the derivative evidence, the tactics employed by the officers must be "`so offensive to a civilized system of justice that they must be condemned.'" Barte, 868 F.2d at 774 (quoting Miller v. Fenton, 474 U.S. 104, 109, 106 S.Ct. 445, 449 (1985)).

Barte sheds some light on the level of coercion needed to rise to the level of a due process violation. There, postal inspectors mailed an envelope, which contained $20 and a transmitter, to a fictitious address on Barte's mail route. 868 F.2d at 773. The inspectors were trailing Barte when the transmitter signalled that the envelope had been opened. Two inspectors approached Barte, identified themselves as postal inspectors, asked Barte to step out of the vehicle, and told him they were looking for a particular letter. One inspector described the envelope and address on it, and Barte denied any knowledge of it. The inspectors told him "We know you have the letter . . . We know you've just opened it.

We're not leaving here until we have our letter." Id. Barte then admitted opening the envelope and taking the $20 and gave them the money and the envelope. After the inspectors recovered that evidence, Barte was given his Miranda warnings. This Court found that although the money and the envelope were a product of a Miranda violation, the district court erred in suppressing the nontestimonial evidence because the officers' tactics did not rise to the level of coercion. Id. at 774.

In the instant case, after hearing the evidence, the court below found that this was not a technical Miranda violation, rather "it was a persistent, moderately lengthy interrogation. The questions were clearly designed to elicit information." The court further opined that "[t]he circumstances of Mendez' involuntary custody compel the conclusion that he was purposely not alerted to his rights to get an incriminating statement, whether an admission or denial." It is unclear whether the district court was applying the correct standard, i.e., were the tactics employed by the officers so offensive to a civilized system of justice that they must be condemned?[6] In any event, the officers' conduct in the instant case certainly is no more coercive than that of the inspectors in Barte. The only testimony adduced at the suppression hearing was that of Officer Luis. After reviewing the record, we

---

[6] Such a conclusion by the district court would not appear to comport with its observations at the suppression hearing. Specifically, after hearing the evidence, the court stated it did not "doubt that Officer Luis made a good-faith evaluation of the circumstances." At an earlier point in the hearing, the court stated that it believed Officer Luis had told the truth.

-10-

find that it does not support the conclusion that the officers' tactics were so offensive as to rise to the level of a due process violation.

Finally, to support the conclusion that Mendez' abandonment of his suitcase was not voluntary,[7] the court below and Mendez have relied heavily on the case of United States v. Morin, 665 F.2d 765 (5th Cir. 1982). In Morin, this Court found the defendant's abandonment of his luggage tainted when a police officer arresting the defendant failed to provide Miranda warnings, and then deliberately sought an admission from the defendant regarding the ownership of the luggage to search it for drugs. Specifically, we held that there was a clear nexus between the illegal arrest of Morin and the subsequent disclaimer of his luggage. That case is inapposite. Unlike the instant case, Morin's arrest was illegal. Moreover, Morin was decided prior to the Supreme Court's decision in Oregon v. Elstad, 470 U.S. 298, 304-09, 105 S.Ct. 1285, 1290-93 (1985). After Elstad, this Court has recognized that "Elstad makes clear that failure to give or carry out the obligation of Miranda warnings in and of itself is not a constitutional infringement, the test by which to evaluate whether a defendant's underlying Fifth Amendment right against compelled testimony has been violated is still the due process voluntariness test." United States v. Cherry, 794 F.2d 201, 207 (5th Cir. 1986), cert. denied, 479 U.S.

---

[7] As we indicated, Luis was the only person to testify at the pretrial suppression hearing, thus, there was no evidence from appellee to show that his abandonment was coerced, uninformed, or involuntary.

1056, 107 S.Ct. 932 (1987) (internal quotation marks and citation omitted).

Here, there was probable cause to arrest Mendez, and thus, the police officers' lawful arrest could not have tainted Mendez' abandonment of the suitcase. Cf. Alvarez, 6 F.3d at 290 (we explained that because the defendant's arrest was lawful, the voluntariness of the defendant's abandonment of the suitcase "was not tainted by any illegal or improper act by the police in executing the arrest warrant."). Further, as discussed above, the officers' conduct did not rise to the level of coercion.

The district court erred in finding that the cocaine should be suppressed. However, as the government concedes, the district court properly suppressed the statements made by Mendez after he was taken off the plane but before he was informed of his Miranda rights.

## V. CONCLUSION

For the reasons set forth above, the district court's order of suppression is REVERSED except insofar as it suppressed the statements made by Mendez after he was taken off the plane but before he was informed of his Miranda rights, and the case is REMANDED for further proceedings.