Myra REYES, Plaintiff,

v.

Eleodoro GRANADOS, acting Chief of Police, in his Individual and Official Capacity; City of Laredo; and David Hinojosa, Antonio Ortegon, Gilberto Magana and Gilberto Navarro, in their Individual and Official Capacity, Defendants.

Civ. A. No. L–93–76.

United States District Court,
S.D. Texas,
Laredo Division.

March 21, 1995.

712

Julio Garcia, Laredo, TX, for plaintiff.

Albert Lopez and Lawrence J. Souza, San Antonio, TX, for defendants.

### MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending before the Court is a Motion for Summary Judgment filed by all Defendants. Plaintiff, Myra Reyes ("Reyes") opposes the motion.

#### Factual Background

On June 11, 1991, Laredo Police Department Detective Gilberto Magana ("Magana") was assigned to investigate the circumstances of a burglary report filed by Officer Bertha Reyes on behalf of her niece, Plaintiff Reyes. At that time, Magana was given the following facts: 1) that a Mrs. Cointa Vela had found a gold and diamond bracelet in the Mall del Norte on March 18, 1991; 2) that on March 25, 1991, Vela called the police to report that she was being harassed by her maid about a potential reward for returning the bracelet; 3) that Reyes' aunt, Officer Bertha Reyes, answered the harassment call and Vela showed her the bracelet and explained how she found it; 4) that about a month later, on April 19, 1991, Plaintiff Reyes filed a burglary report pertaining to the residence of her niece; 5) that the report indicated that the burglary had occurred on March 22, 1991 and that jewelry was stolen; 6) that on the same day she filed the report, Officer Reyes returned to Vela's home and demanded the bracelet from Vela, telling her that it was part of Plaintiff Reyes' jewelry which had been stolen the previous month; and 7) and that Officer Reyes took the bracelet after being told by Mrs. Vela that the bracelet belonged to Sylvia Whitworth.

Magana's specific task was to investigate whether there had been an agreement between Officer Reyes and Plaintiff Reyes to misappropriate the bracelet by filing a false report. After interviewing several witnesses and reviewing police records, he identified several discrepancies and a possible alteration in the police department's dispatcher "radio log". He also discovered that Plaintiff Reyes picked up the bracelet from the evidence room about forty minutes after Officer Reyes had deposited the bracelet there. Officer Reyes had named her niece as the "victim" on the property tag and noted that the bracelet was "found" at the Vela residence. Magana also knew that Mrs. Whitworth's description of the stolen bracelet aptly fit the bracelet in police custody, and was told that Plaintiff Perez did not live at the site of the alleged burglary—1707 Monterrey Street—in March 1991. Magana attempted to locate Plaintiff Reyes "many times" to ask her questions, but ultimately learned that she was temporarily living in Mexico.

On June 18, 1991, while on duty, Magana spotted Plaintiff Reyes riding as a passenger in a pick-up truck at the intersection of Lafayette and San Dario streets. Because he was in plainclothes and in an unmarked vehicle, he requested a marked police vehicle to stop the truck. There are conflicting versions of the events following the stop. Magana's version of what followed is that:

... I approached the Plaintiff and told her that I needed to speak to her regarding the burglary report that she filed. I also asked her if she would go with me to the Police Department. The Plaintiff agreed to go and she traveled in my car. The Plaintiff was not handcuffed and there was no physical contact with the Plaintiff. I did not harass, threaten or intimidate the Plaintiff.... In the Police Department, the Plaintiff cooperated by answering my questions.... The interview with the Plaintiff took a long time because of the many inconsistencies in her testimony and the facts of the case.... I used no physical force during the meeting with the Plaintiff. The Plaintiff was not under custody and she was free to stop the interview any time. Plaintiff did not ask to leave until the end of the meeting. The Plaintiff asked only once if she could leave, and I said 'yes.' Plaintiff then left the Police Department.

Reyes' version of the same incident is that when Magana arrived at the scene, he told her that it was "mandatory" that she accompany him to Police Headquarters; that she rode in the front seat of Magana's vehicle to the police department; that he refused to tell her the reason until she got to Police Headquarters; that she requested the "right to use the telephone, but was denied permission ... [d]espite repeated requests;" that Magana and another detective, Gilberto Navarro ("Navarro"), "yelled at, threatened, harassed, intimidated and humiliated" her and demanded that she "re-write another statement according to the words they would recite" for her; and that she was "detained for three and one-half hours" before being released. Reyes does not allege any physical contact or abuse.

Plaintiff filed suit under 42 U.S.C. § 1983 and § 1985 claiming violations of: the First Amendment right of association and speech; Fourth Amendment right to be free from arrest without probable cause; Sixth Amendment right to be informed of the true nature of accusations against her; Fifth and Fourteenth Amendment right to due process of law; Ninth and Tenth Amendment rights; privacy rights under the First, Third,

Fourth, Fifth and Ninth Amendments; the Equal Protection clause; the "constitutional right to freedom from unlawful interference by police ... and constitutional right for freedom from assault and bodily injury" ... and "false imprisonment." Reyes also claims that Defendants failed to give her *Miranda* warnings and "were conspirators engaged in a scheme and conspiracy designed and intended to deny and deprive [Reyes] of her rights" under the Constitution. Defendants filed the pending motion—the individual defendants claiming qualified immunity on all claims because Reyes failed to state any constitutional violation, and the City of Laredo claiming Reyes has failed to show liability under *Monell*. In response, Reyes filed an extremely brief opposition to the motion, attaching but not referring specifically to, her own affidavit, Officer Reyes' affidavit and a copy of her entire deposition transcript.

*Analysis*

In analyzing the Defendants' qualified immunity claims, the Court must determine two things: first, whether Reyes has asserted a violation of a constitutional right at all; and second, whether the defendants' actions were objectively reasonable in light of clearly established law at the time of the action. *Johnston v. City of Houston,* 14 F.3d 1056, 1060 (5th Cir.1994) *citing Siegert v. Gilley,* 500 U.S. 226, 231, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991). While Reyes, in conclusory fashion, claims many constitutional violations, the factual record fails to support any viable claim under § 1983.

First, there is no allegation or evidence in the record that Reyes was ever prosecuted for anything related to her theft report. Therefore, her allegations regarding lack of the "prophylactic" warnings under *Miranda* cannot amount to an infringement of any constitutional right. *U.S. v. Mendez,* 27 F.3d 126, 131 (5th Cir.1994) (the potential constitutional violation involved is the Fifth Amendment protection against compelled testimony). And, while the Sixth Amendment provides an accused the right "to be informed of the nature and cause of the accusation" against her, that "protection does not come into play until the government has

committed itself to prosecution." *Kaldis v. Brezek,* 823 F.2d 1014, 1018 (7th Cir.1987) *citing United States ex rel. Hall v. Lane,* 804 F.2d 79, 82 (7th Cir.1986), *cert. denied,* 480 U.S. 921, 107 S.Ct. 1382, 94 L.Ed.2d 696 (1987); *Bradley v. Extradition Corp. of America,* 758 F.Supp. 1153, 1156 (W.D.La. 1991).

■ Reyes also appears to be alleging that Magana used excessive force in detaining and questioning her, in violation of the Fourth Amendment. "It is well settled that if a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment guarantee against unreasonable seizure is implicated." *Harper v. Harris County, Texas,* 21 F.3d 597, 600 (5th Cir.1994). However, "mere allegations of verbal abuse" do not rise to the level of a constitutional violation, and therefore "do not present actionable claims under § 1983." *Bender v. Brumley,* 1 F.3d 271, 274 n. 4 (5th Cir.1993). Reyes makes no allegations of any physical contact or restraint in this case, complaining only of verbal abuse. Therefore, she has not stated an excessive force claim under the Fourth Amendment. Moreover, a claim for damage to reputation as such would not lie under § 1983. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976).

Although Reyes claims a violation of the First Amendment rights of speech and association, Reyes does not offer any evidence that she was arrested for, or prohibited from, exercising these rights. Nor has she offered any support for her claims regarding violations of the Ninth and Tenth Amendments, the right of privacy, or the Fourteenth Amendment's equal protection clause.

■ Reyes also makes a claim that all defendants, by their acts, have conspired to deprive her of her constitutional rights. In response to this, all the individual defendants submitted affidavit testimony as to their participation in the investigation of the alleged attempted theft of the bracelet as well as their contact with the Plaintiff. Reyes has not designated "specific facts showing that

there is a genuine issue for trial" on this claim, in either her pleadings or her response to the pending motion, and the Court has no duty to search the entire record to discover supportive facts for Plaintiff. *Nissho–Iwai Amer. Corp. v. Kline,* 845 F.2d 1300, 1307 (5th Cir.1988). Nevertheless, the Court has read her affidavit and deposition, as well as the affidavit of Bertha Reyes.

■ Regarding the inclusion of the City of Laredo as a Defendant, Reyes must identify an official policy or custom as the source of the deprivation of a constitutional right. *Monell v. Dept. of Social Services,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978); *Bennett v. City of Slidell,* 728 F.2d 762, 767 (5th Cir.1984), *cert. denied,* 472 U.S. 1016, 105 S.Ct. 3476, 87 L.Ed.2d 612 (1985). The City of Laredo pled Reyes' failure to identify such a policy as a defense in its answer, and raises the issue again on summary judgment. Reyes has failed to identify any such policy or procedure under *Monell.*

■ Finally, with respect to Reyes' seizure-related claims, they cannot be analyzed under any clause except the Fourth Amendment, because that amendment is the "explicit textual source of constitutional protection" and provides the preferred "guide for analyzing these claims." *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 813, 127 L.Ed.2d 114 (1994). Reyes main seizure-related complaint appears to be that she was "arrested" without probable cause.[1] Probable cause exists if *"at the moment the arrest was made ... the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing"* that the defendant had committed or was committing an offense. *Hunter v. Bryant,* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (stating that a court should ask whether the actions were reasonable under the circumstances, not whether a more reasonable interpretation of events could be constructed after the fact) (emphasis added). The quali-

---

1. Under Texas law a police officer may only arrest an individual without a warrant if the officer has probable cause to believe that a seri-

ous offense has occurred or where he witnesses a violation of the law. *Harper v. Harris County, Tex.,* 21 F.3d 597, 601 (5th Cir.1994).

fied immunity doctrine "gives ample room for mistaken judgments" and protects all but the plainly incompetent or those who knowingly violate the law. *Id.*

Defendant Magana has submitted an affidavit detailing the results of his investigation prior to detaining Reyes. The investigation included examination of police records and witness interviews. Magana's knowledge of this reasonably trustworthy evidence would have been sufficient to warrant a prudent person in believing that the defendant had committed an offense[2]. Plaintiff Reyes' testimony to the contrary was available to Magana *only after her detention,* and is therefore not a consideration in determining whether he had probable cause at "the moment" of her detention. Even if Magana arguably erred, his decision was not plainly unreasonable. *See Hunter,* 502 U.S. at 228, 112 S.Ct. at 537.

Accordingly, Defendants' motion for summary judgment will be GRANTED, and this case will be DISMISSED.

2. The offense involved appears to be a violation of Tex.Penal Code Ann. § 31.03(a), which states "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Because the property allegedly unlawfully appropriated was valued at $3,110.00, at the time of the investigation, a violation would have been classified as a "felony of the third degree." Tex.Penal Code Ann. § 31.03(e)(4)(A).