IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-40159

Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

LARRY LEE MARTIN, a/k/a Larry Simpson

Defendant-Appellee.

---

Appeal from the United States District Court
for the Eastern District of Texas
(4:94 CR 49 2)

---

September 11, 1995

Before HIGGINBOTHAM, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:[*]

A jury convicted Larry Martin of conspiracy to possess with intent to distribute crack cocaine, of possession with intent to distribute a controlled substance, and of carrying a firearm during the commission of a drug-trafficking crime. Martin appeals, stating that the trial court should have suppressed a pistol and several rocks of crack found in a car, as well as

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

certain statements made to a police officer at the scene.  We
affirm.  We examine Martin's arguments in the order of the
factual chain of events forming the basis for his conviction.


I.  Initial Terry-stop

Martin argues that his initial encounter with police
officers violated the Fourth Amendment because the encounter was
either an arrest without probable cause or a seizure under Terry
v. Ohio, 392 U.S. 1 (1968), without reasonable suspicion.  We
disagree.

Initially, we must decide whether Martin's initial encounter
with law enforcement officers constituted a Terry-stop or if,
either initially or as questioning progressed, the incident
became a full-scale arrest.  The Fourth Amendment prohibits
officers from arresting a suspect without probable cause, but
under Terry, police may seize a suspect for brief questioning if
they meet the lesser burden of establishing reasonable suspicion.
An encounter constitutes a Terry-stop or a seizure, as opposed to
an arrest, if the detention is "temporary and lasts no longer
than is necessary to effectuate the purpose of the stop."
Florida v. Royer, 460 U.S. 491, 500 (1983) (plurality opinion).
In such a seizure, "the investigative methods employed should be
the least intrusive means reasonably available to verify or
dispel the officer's suspicion in a short period of time."  Id.
at 500.  The state bears the burden of proof.  Id.  In deciding
whether a particular encounter constitutes a seizure or an

arrest, courts consider, among other factors, the duration of the detention, the coerciveness of the surrounding environment, and whether law enforcement officials acted in an intimidating manner. United States v. Berry, 670 F.2d 583, 601-03 (5th Cir. 1982) (en banc).

The factors stated above suggest that the encounter among Officer Young, Detective Sardone, and Martin was a Terry-stop, not an arrest. The encounter took place in a non-coercive setting, a public parking lot. Martin was within a short distance of his companions, not alone. Initially, the duration of the encounter was short, no longer than necessary to ask Martin for identification and to run a drivers license check. The length of the encounter stretched longer only as suspicion increased that Martin had given a false name. The officers took no threatening action; all they did was ask for identification. While the officers did have pistols in hand, "[a]n investigatory stop is not automatically an arrest simply because an officer draws his gun." United States v. Worthington, 544 F.2d 1275, 1280 n.3 (5th Cir.), cert. denied, 434 U.S. 817 (1977). Given the non-coercive nature of the rest of the encounter, we find the presence of drawn guns insufficient to transform the initial encounter from a Terry-stop to an arrest. See id. at 1279-80 & n.3 (holding that an officer's approach in the night with a flashlight and a drawn gun constituted a seizure, not an arrest). Furthermore, given the non-threatening way in which the encounter developed, we hold that no arrest took place until Officer Young

3

returned from his second computer check and formally arrested Martin.

We now turn to the requirement of reasonable suspicion, and hold that the officers had sufficient grounds to stop Martin. To justify a Terry-stop, law enforcement officers must have an "articulable suspicion that a person has committed or is about to commit a crime." Royer, 460 U.S. at 498. At the time they stopped Martin, Officer Young and Detective Sardone knew that a drug transaction between Detective Cogwell and Black was to take place at the Fina Mart, that Black had told Cogwell that 3-4 other owners of the crack were likely to be present, and that Black dealt drugs only with African-Americans. They knew that shortly after Black arrived, a Mitsubishi Gallant with 3 black men pulled into the Fina Mart, stopped, then drove slowly through the lot to park in front of a nearby restaurant. They knew that one of the persons in the car went initially into the restaurant, then left to observe the Fina Mart parking lot. They knew that this same man then walked toward the Fina Mart. We agree that the officers had an articulable suspicion, founded on known facts, that the occupants of the car were the 3-4 crack owners that Black had mentioned, and that the occupants were involved in the drug transaction.[1]

---

[1] We have also considered Martin's contention that the initial Terry-stop was based on pretext. We deem this argument meritless.

4

## II.  Probable Cause for Arrest

Martin argues that no probable cause existed to support his arrest, even if the encounter first became an arrest when Officer Young formally arrested Martin.  We disagree.  At the time of the arrest, Officer Young had verified the existence of several outstanding arrest warrants against Martin.  Martin does not challenge the legality of these warrants.  The outstanding warrants constituted probable cause to arrest.

## III.  <u>Miranda</u> Claim

The trial court denied Martin's motion to suppress his response to questions after his arrest but before he was informed of his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  Martin appears to appeal this ruling.  We do not reach the issue of whether a <u>Miranda</u> violation occurred because we find that any such violation was harmless beyond a reasonable doubt.

When Officer Young placed Martin under arrest, Martin stood up and keys fell from his person to the ground.  Officer Heaton asked Martin if the keys were his, and Martin responded in the negative.  The prosecution subsequently used this denial at closing argument.  After recounting the incident, the prosecution argued that Martin was "distancing himself from that car, as far as possible.  Why?  Because he knows there's crack in there and he knows there's a firearm in there."

Nevertheless, this error was harmless beyond a reasonable doubt.  <u>See</u> <u>Chapman v. California</u>, 386 U.S. 18, 24 (1967).  One

5

of the officers at the scene testified that Martin was the driver of the car. The keys to the Mitsubishi were in Martin's possession. A search of the car revealed the gun and the crack cocaine. We may properly consider this physical evidence, even if a <u>Miranda</u> violation occurred, because the fruits of the poisonous tree doctrine does not apply to violations of the <u>Miranda</u> rule. <u>United States v. Mendez</u>, 27 F.3d 126, 130 (5th Cir. 1994). This evidence, together with other testimony already discussed connecting Martin to the ongoing crack transaction, was "`not only sufficient to support the verdict but so overwhelming as to establish the guilt of the accused beyond a reasonable doubt.'" <u>United States v. Baldwin</u>, 691 F.2d 718, 723-24 (5th Cir. 1982) (quoting <u>Harryman v. Estelle</u>, 616 F.2d 870, 876 (5th Cir.) (en banc), <u>cert. denied</u>, 449 U.S. 860 (1980)).

## IV. Search of the Car

The trial court held that Martin lacked standing to challenge the search of the Mitsubishi that produced the gun and crack cocaine. We agree.

A defendant seeking to suppress evidence on Fourth Amendment grounds bears the burden of showing that he has standing to invoke the exclusionary rule. <u>United States v. Wilson</u>, 36 F.3d 1298, 1302 (5th Cir. 1994). "`It is settled law that one has no standing to complain of a search or seizure of property he has voluntarily abandoned." <u>United States v. Alvarez</u>, 6 F.3d 287, 289 (5th Cir. 1993) (quoting <u>United States v. Colbert</u>, 474 F.2d

6

174, 176 (5th Cir. 1973) (en banc)), cert. denied, 114 S. Ct. 1384 (1994).  This rule stems from the requirement that those seeking to invoke the Fourth Amendment must exhibit "an actual, subjective expectation of privacy with respect to the place being searched or items being seized."  Wilson, 36 F.3d at 1303.

Martin voluntarily disavowed any privacy claim to the Mitsubishi.  Although the car keys were found on his person shortly after the arrest, Martin denied that the keys were his. In a later interview, Martin denied owning the car and  refused to state whether he was the driver of the car.  Martin did not testify at the motion to suppress; in fact, he called no witnesses and introduced no evidence at the hearing on this motion.  Finally, at the hearing, Martin's attorney stated that he "wouldn't argue" with the trial judge's assertion that Martin had no "standing to complain about the -- what was obtained from the automobile" because Martin "had no expectation of privacy in there."  Although it appears that the court below raised the issue of standing sua sponte, Martin has not argued that he was surprised by the court's questions and holding, nor that he was prevented from presenting evidence on the standing issue, nor that the manner in which the court raised this issue constituted error.  Cf. United States v. Boruff, 909 F.2d 111, 116 (5th Cir. 1990) (holding that a defendant was entitled to an opportunity to present evidence of standing when the government did not raise the issue until after the suppression hearing), cert. denied, 499 U.S. 975 (1991).  We agree with the trial court that Martin

7

disavowed any subjective expectation of privacy over the contents of the car and therefore lacked standing to challenge the search.